Samuel M. Gold, J.
There are now before the court a motion to confirm, and a motion to modify, the report of a Referee heretofore appointed to take proof as to whether petitioner’s amended plan of reorganization, for the buildings at 165 Broadway, 99 Liberty Street and 169-171 Broadway, should be approved, or any other plan adopted. The Referee has recommended approval of that part of the amended plan which calls for an “ extension and modification of mortgages,” with certain modifications suggested by the Referee. The Referee’s report is unusually painstaking and thorough, covering all the contentions made by the various interested parties, including the ones now urged by those opposing confirmation of the report or asking for its modification.
The principal opposition to the approval of the report comes from representatives of various holders of the first mortgage certificates. They contend that the property can be sold at this time for a price sufficient to pay the certificates (which matured May 1, 1958) in full. They urge that the provisions of the amended plan for extension of their certificates, as modified, by the Referee, do not give them the full cash equivalent of their certificates, and that, therefore, the plan is unfair to them and violates their rights. If a proper valuation of the property requires the conclusion that the owner possesses no equity therein judicial approval will not be given to a plan which attempts to secure the subordinate rights of the owner at the expense of the bondholders. This is pointed out in the Referee’s report. On the other hand, if such valuation indicates that the owner does possess an equity, a plan of reorganization which makes some provision for the owner’s equity may be approved, provided, however, that the security holders receive the full *576 equivalent of the securities held hy them. This is carefully explained in the Referee’s report, with abundant citation of authority. As the Referee aptly points out, the valuation employed for the purpose of determining whether the owner possesses an equity in the property is not the amount which a present sale thereof would realize, but rather the value “in terms of the future stabilized annual income they (the assets) will be able to yield ”. On the basis of the expert testimony adduced before him, the Referee has found that the value of the property, in terms of its earning power, is greatly in excess of the owner’s oustanding obligations. With this finding of the Referee the court is in complete agreement. The question remains whether the provisions of the amended plan, as modified by the Referee, give the certificate holders the full equivalent of their certificates. This does not require, however, as some of the certificate holders claim, that the provisions of the plan give the certificate holders the full present cash equivalent of their certificates. The proposed plan, as modified by the Referee, in return for a 10-year extension of the certificates, gives the certificate holders many benefits they do not now possess. It increases the interest rate from 41/2% to 514% per annum. It makes substantial increases in the sinking fund for the certificates and makes the owner’s obligation to set aside the fund, a fixed one, which it is not at this time. It gives the certificate holders a stock interest in the owner corporation and representation on its board of directors.
It makes provision for various economies and savings, and it forbids dividends until all obligations are paid. It requires the owner to contribute $250,000 to be used in connection with the proposed reorganization, etc., and contains various other provisions of benefit to the certificate holders. The Referee has found that the proposed plan, as modified by him, gives the certificate holders the full equivalent of their certificates and that it is, therefore, fair to them and does not violate their rights. Some of the certificate holders take issue with this finding of the Referee and' make varying suggestions for increases in the interest rate and for other additional benefits.
The court has carefully considered all the arguments and suggestions made, and has reached the conclusion that in order to give the certificate holders the full equivalent of their present certificates, the interest rate of the extended certificates should be increased to 5%% per annum, retroactive to May 1,1958 (the date their present certificates became due) and the stock interest in the owner corporation to be received by the certificate holders should be increased from 6.6% to 20%. The provisions of the *577 present mortgage for a sinking fund for the certificate holders are to continue as a condition of approval of the plan.
The situation of the holders of the general mortgage bonds is such that only little is required to give them the full equivalent of their present holdings. If a sale were presently had, they would receive little or nothing. The court agrees with the Referee’s finding that the amended plan, as modified, gives them the full equivalent of their bonds. Their claim that they are presently entitled to interest or sinking fund payment appears to be without merit in view of the default on the senior certificates on May 1, 1958 and the paramount rights of the certificate holders from that time on.
It is unnecessary to discuss in detail each and every other contention and suggestion made by the various attorneys who have appeared in this proceeding. They are all, or practically all, discussed and satisfactorily answered in the Referee’s report.
The court approves the Referee’s recommendation that the plan contain a covenant with respect to the obligation of the petitioner to make certain immediate improvements to the property. However, in the event that the available net earnings and petitioner’s credit are inadequate to effect the installation of such improvements within the time specified, the necessary funds are to be obtained from the present majority stockholders rather than from the stockholders generally.
For the foregoing reasons, the motion to confirm the Referee’s report is granted to the extent of approving the amended plan, as modified by the Referee, with the amendments indicated in this opinion. The owner’s motion to modify the Referee’s report is denied.